IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHERYL FINNEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 16 C 3815 |
| v. | ) | |
| | ) | Magistrate Judge |
| NANCY A. BERRYHILL[1], Acting | ) | Maria Valdez |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff Cheryl Finney's ("Plaintiff") claims for Social Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion for summary judgment is denied and the Commissioner's cross-motion for summary judgment [25] is granted.

## BACKGROUND

### I.    Procedural History

Plaintiff filed her application for SSI on June 17, 2010 alleging disability beginning January 1, 2007 due to sleep apnea, asthma, and injury to her right

---

[1] Nancy A. Berryhill is substituted for her predecessor, Carolyn W. Colvin, pursuant to Federal Rule of Civil Procedure 25(d).

hand. (R. 117, 456.) The claim was initially denied on August 4, 2010 and upon reconsideration on November 4, 2010. (R. 235–36.) After filing a written request for a hearing, Plaintiff appeared and testified on April 29, 2011 before an Administrative Law Judge ("ALJ") who issued an unfavorable decision on July 19, 2011. (R. 237–52.) On September 20, 2012, the Appeals Council remanded Plaintiff's claim for further proceedings before an ALJ. (R. 253–56.) A second hearing was held before an ALJ on March 22, 2013, with a supplemental hearing occurring on April 8, 2014. (R. 49–184.) Plaintiff was represented by her attorney, Joseph Sellers at both hearings. (*Id.*) At the March 22, 2013 hearing, medical expert, Dr. James McKenna, M.D., appeared and testified. (R. 113–84.) A vocational expert, Pamela Tucker, was also present at the hearing and testified. (*Id.*) At the April 8, 2014 hearing, vocational expert, Dr. Hilda Martin, M.D., appeared and testified. (R. 49–112.) On July 10, 2014, the ALJ denied Plaintiff's claim for SSI, finding her not disabled under the Social Security Act. (R. 14–48.) The Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005) (R. 1–7.)

## II.    ALJ Decision

On July 10, 2014, the ALJ issued an unfavorable written determination finding Plaintiff was not disabled. (R.14–48.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since June 17, 2010, her application date. (R. 19.) At step two, the ALJ found that Plaintiff suffered from

severe impairments of asthma, obstructive sleep apnea, and obesity. (*Id*.) He also found Plaintiff had non-severe impairments of diabetes mellitus and hypertension. (*Id*.) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meet or medical equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (R. 36.)

Before step four, the ALJ found that prior to February 1, 2014, Plaintiff had the residual functional capacity ("RFC") to perform work at a light exertional level, subject to several limitations.[2] At step four, the ALJ concluded that Plaintiff had no past relevant work. (R. 39.) At step five, based on Plaintiff's age, education, work experience, and RFC, the ALJ determined there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed such as office helper, mail clerk, and sales attendant. (R. 39–40.) Because of this determination, the ALJ found that Plaintiff had not been disabled under the Act. (R. 40.)

---

[2] At this stage, the ALJ determined Plaintiff could:

> [L]ift/carry 20 pounds occasionally and 10 pounds frequently; push/pull frequently up to the same limits; sit frequently and stand/walk frequently; engage in foot controls frequently; engage in stooping, crouching, crawling occasionally; never climb long ladders, ropes or scaffolds; climb ramps and stairs occasionally; balance frequently; engage in overhead reaching occasionally; work in retail, office, or high-tech settings; avoid even concentrated exposure to heat and humidity; never work at unprotected heights or danger, unguarded machinery or moving machinery like forklifts or robotic arms; maintain concentration leading to on task productivity with a moderate limitation which [he] peg[ged] at a residual 90% of the workday; work without social limitations so that there is no limitations with respect to coworkers, supervisors or the public; take public transportation, feed self, dress self, bathe self and engage in person hygiene; demonstrate no decompensations and attend work without work attendance issues.

(R. 37.)

# DISCUSSION

## III. ALJ Standard

Under the Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform his former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer to any remaining question precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps one through four. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## IV. Judicial Review

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "reasonable minds could differ" as long as "the decision is adequately supported.") (internal citation omitted).

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind [his] decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a plaintiff, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex*

*rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning. . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

We review the ALJ's decision but we play an "extremely limited" role. *Elder*, 529 F.3d at 413. Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

## V.     Analysis

Plaintiff alleges that the ALJ's decision should be remanded because: (1) the ALJ improperly "played doctor" when evaluating the severity of Plaintiff's nonexertional limitations and (2) his adverse credibility determination was legally flawed. The Court disagrees.

### A. The ALJ's RFC Determination

First, Plaintiff alleges that the ALJ failed to evaluate whether her depression and anxiety were medically determination impairments. (Pl.'s Br. at 7–8.)

"The RFC is an assessment of what work-related activities the claimant can perform despite her limitations." *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir.

2004); *see* 20 C.F.R. § 404.1545(a)(1) ("Your residual functional capacity is the most

you can still do despite your limitations."). In determining an individual's RFC, the

ALJ must consider all of her limitations which arise from medically determinable

impairments, even those that are not severe. SSR 96-8p; *Villano v. Astrue*, 556 F.3d

558, 563 (7th Cir. 2009). "[R]egardless of how many symptoms an individual alleges,

or how genuine the individual's complaints may appear to be, the existence of a

medically determinable physical or mental impairment cannot be established in the

absence of objective medical abnormalities; i.e., medical signs and laboratory

findings." *See* SSR 96-4p, at *1.

In his decision, the ALJ expressly addressed Plaintiff's allegations of

depression, finding that they were limited to personal statements and descriptions

of depressive symptoms. (R. 28, "there is no indication in the record that [Plaintiff]

is receiving significant treatment for depression"; R. 37, "primary care notes show

that [Plaintiff] infrequently complained of depression.") Plaintiff claims she

"produced" evidence of these impairments, but as the ALJ's decision reflects, her

depression is generally self-reported. The Court cannot say the ALJ erred here in

his analysis, where Plaintiff points to no medical signs or laboratory testing which

indicate depression. *See Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004) ("It is

axiomatic that the claimant bears the burden of supplying adequate records and

evidence to prove their claim of disability.")

Plaintiff's related claim regarding her anxiety is likewise flawed. Unlike her

depression, Plaintiff's anxiety was documented on a limited number of occasions,

which the ALJ recounted in his decision. (R. 25, 31.) To interpret this evidence, the ALJ relied on the findings of Dr. James McKenna, M.D., the medical expert who testified at Plaintiff's March 2013 hearing. Dr. McKenna acknowledged Plaintiff's anxiety—which interrupted her ability to sleep—would cause a reduction her mental sharpness during the day, which he accounted for by reducing her to light exertional work. (R. 33, 101.) The ALJ accorded great weight to Dr. McKenna's opinion and adopted these findings. Therefore, his determination on this point was supported by substantial evidence.

Second, Plaintiff claims that it is "impossible to determine" how the ALJ reached his conclusion that Plaintiff could maintain concentration for ninety percent of a workday. (Pl.'s Br. at 7.) Once again, a claimant's RFC is the most she can still do despite her limitations. *See* 20 C.F.R. § 404.1545(a)(1). When determining a claimant's RFC, an ALJ need only incorporate those limitations which he finds are supported by the record. *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014).

Plaintiff's voluminous record contains records from treating physicians, examining physicians, and non-examining physicians, but Plaintiff points to doctor's opinion which expresses that her difficulties with concentration, persistence, or pace would result in a work-related limitation. In fact, the strongest evidence of Plaintiff's difficulties in this area comes from Plaintiff's subject reports, not the opinions of her doctors.

Because no medical professional found that Plaintiff's difficulties in concentration, persistence, and pace would result in any workplace limitations, the fact that the ALJ "pegged" her concentration abilities at around ninety percent is of no import. Plaintiff has failed to show how she is harmed, particularly because the ALJ's RFC is *more* restrictive than those provided by any of Plaintiff's physicians. Accordingly, the Court finds no error at this stage.

### B. The ALJ's credibility determination

Plaintiff next argues that the ALJ improperly assessed her subjective symptom statements and credibility.[3] An ALJ's credibility determination is granted substantial deference by a reviewing court unless it is "patently wrong" and not supported by the record. *Schmidt v. Astrue,* 496 F.3d 833, 843 (7th Cir. 2007); *Powers v. Apfel,* 207 F.3d 431, 435 (7th Cir. 2000); *see also Elder,* 529 F.3d at 413 (holding that in assessing the credibility finding, courts do not review the medical evidence *de novo* but "merely examine whether the ALJ's determination was reasoned and supported"). An ALJ must give specific reasons for discrediting a claimant's testimony, and "[t]hose reasons must be supported by record evidence

---

[3] In 2016, the Commissioner rescinded SSR 96-7p and issued SSR 16-3p, eliminating the use of the term "credibility" from the symptom evaluation process, but clarifying that the factors to be weighed in that process remain the same. *See* SSR 16-3p, 2016 WL 1119029, at *1, *7 (March 16, 2016). The ruling makes clear that ALJs "aren't in the business of impeaching claimants' character," but does not alter their duty to "assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original). However, the SSA recently clarified that SSR 16-3p only applies when ALJs "make determinations on or after March 28, 2016," and that SSR 96-7p governs cases decided before the aforementioned date. *See* Notice of Social Security Ruling, 82 Fed. Reg. 49462 n.27 (Oct. 25, 2017). The ALJ issued his opinion on March 25, 2014. (R. 57.) Therefore, the ALJ properly applied SSR 96-7p. Nonetheless, SSR 16-3p will apply on remand. *See* Notice of Social Security Ruling, 82 Fed. Reg. 49462 n.27 (Oct. 25, 2017).

and must be 'sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.' " *Lopez ex rel. Lopez v. Barnhart,* 336 F.3d 535, 539–40 (7th Cir. 2003) (quoting *Zurawski,* 245 F.3d at 887–88); *see* SSR 96-7p, 1996 WL 374186, at *4 (S.S.A. 1996).

The lack of objective evidence is not by itself reason to find a claimant's testimony to be incredible. *See Schmidt v. Barnhart,* 395 F.3d 737, 746–47 (7th Cir. 2005). When evaluating a claimant's credibility, the ALJ must also consider "(1) the claimant's daily activity; (2) the duration, frequency, and intensity of pain; (3) the precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions." *Scheck,* 357 F.3d at 703; *see also* SSR 96-7p at *3. An ALJ's "failure to adequately explain his or her credibility finding . . . is grounds for reversal." *Minnick v. Colvin*, 775 F.3d 929, 937 (7th Cir. 2015).

Here, the ALJ stated that he assigned only "moderate" weight Plaintiff's allegations regarding her subjective symptoms. (R. 21.) Plaintiff raises several challenges to the ALJ's adverse credibility determination, arguing that the ALJ improperly assessed her credibility based upon: (1) her noncompliance with her medications, (2) her limited treatment corroborating her allegations, and (3) her allegedly inconsistent statements about her daily activities. The Court briefly addresses each of these issues in turn.

### i. Non-compliance

First, Plaintiff complains that the ALJ improperly cherry-picked three instances of non-compliance with her asthma medications to support his denial of disability, while ignoring evidence that supported her claim. (Pl.'s Br. at 10.) While ALJs are prohibited from cherry-picking, s*ee Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant . . . evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding."), they are not required to discuss every piece of evidence in the record in favor of their determinations. *McKinzey v. Astrue*, 641 F.3d 884, 891 (7th Cir. 2011) ("[g]enerally speaking, an ALJ's adequate discussion of the issues need not contain a complete written evaluation of every piece of evidence.") (internal quotation marks and citation omitted).

Here, as the ALJ noted, Plaintiff testified that she was non-compliant with her asthma medication because she was "tired of taking medication all the time." (R. 22.) He also listed at least three occasions that Plaintiff's non-compliance with her medication resulted in exacerbation of her asthma. (R. 20, 23, 24, 27.) Along with this evidence the ALJ acknowledged several instances where Plaintiff was compliant with her medications, but remained susceptible to asthma attacks. (R. 25, 26.) Contrary to Plaintiff's argument, this is not an example of cherry-picking, but rather, the ALJ simply weighing the evidence as he is required to do. *Elder*, 529

F.3d at 413 (holding that the ALJ's decision must be affirmed even if "reasonable minds could differ" as long as "the decision is adequately supported.")

In a related argument, Plaintiff complains that the ALJ improperly used her non-compliance with her sleep mask against her, which she cannot control because she "knocks it off" in her sleep. (*Pl.'s Br.* at 10–11.) The ALJ pointed out that Plaintiff was only compliant with her mask around three hours per night and that she frequently knocked it off in her sleep. (R. 27.) He likewise noted that there were times she was not compliant at all. (R. 28, "notes show [Plaintiff] used the CPAP machine for approximately 54% of the days. . . .") First, Plaintiff fails to appreciate the ALJ's distinction between knocking her mask off and not using it at all. Second, the ALJ found that Plaintiff's testimony that she knocked off the mask was consistent with her testimony that she sleep only three hours a night. (R. 27.) Yet, Dr. McKenna, stated that Plaintiff had a "good response" to the mask even when used for her short sleep cycle. (*Id.*) Thus, the ALJ found that her statements regarding her symptoms were not credible because she did not use her mask all the time, despite the fact that it improved her condition. (*Id.*) Accordingly the Court finds the ALJ did not err at this point.

### 2. Failure to Seek Treatment

Next, Plaintiff criticizes the ALJ's determination that she was incredible due to her failure to seek or pursue treatment. An ALJ cannot discount a claimant's allegations of pain based on a failure to seek medical treatment without at least discussing the reasons given by the claimant for not seeking such treatment. *See*

*Beardsley v. Colvin*, 758 F.3d 834, 840 (7th Cir. 2014) ("But the ALJ may not draw any inferences 'about a claimant's condition from his failure [to seek treatment] unless the ALJ has explored the claimant's explanations as to the lack of medical care.'") (quoting *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008)); SSR 96-7p, 1996 WL 374186, at *7.

Here, the ALJ found that Plaintiff's failure to seek treatment with a mental health counselor or specialist weighed negatively against her credibility, but failed to explore Plaintiff's reasoning on the matter. Although this could lead to remand under the general rule, in this case it results in harmless error. Coincidently, Plaintiff commits the same error that she is criticizes the ALJ for, namely, failing to provide any specific reason she did not seek medical treatment for her impairments. Because Plaintiff has not pointed to any evidence which would affect the ALJ's finding on this point, such as an inability to afford treatment, the Court finds that no error occurred. *Spiva v. Astrue,* 628 F.3d 346, 353 (7th Cir. 2010) (stating that the Seventh Circuit will not remand a case to the ALJ "if it is predictable with great confidence that the agency will reinstate its decision on remand" due to the overwhelming support of the record.)[4]

### 3. Inconsistent Statements

Finally, Plaintiff's argues that the ALJ's credibility determination was flawed because he mistakenly believed she made inconsistent statements regarding her

---

[4] Plaintiff also complains the ALJ discounted her testimony based on the fact that she had only recently sought a new mask which was fitted specifically for her. (R. 28.) But once again, Plaintiff herself has failed to provide any explanation as to why she had not sought a new mask earlier.

activities of daily living. (Pl.'s Br. at 11.) Here, the ALJ found that Plaintiff's testimony that she could generally take care of her hygiene was inconsistent with "[s]ometimes" needing her children's help bathing and dressing. (R. 27.) Likewise, he found that her statement that she was able to cook half the time was contradicted by her testimony that "what she meant by cooking [was] opening a can of food." (R. 28.) Third, he determined that her testimony from 2013 that she was able to take public transportation, was inconsistent other statements she made claiming she had not used public transit since she injured her foot in 2012. (*Id.*) Aside from this final example, it does not appear that Plaintiff's statements were entirely inconsistent.

Despite the ALJ's flawed analysis at the point, the Court need only disturb an ALJ's credibility determination where it is "patently wrong." *Schmidt,* 496 F.3d at 843. Thus, even if the ALJ evaluated the inconsistency between Plaintiff's statements incorrectly, remand is not proper because it is otherwise supported by substantial evidence based on the objective record, Plaintiff's non-compliance with her medication, and her failure to seek treatment. Accordingly, the Court affirms the ALJ's credibly determination.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is denied and the Commissioner's cross-motion for summary judgment is granted. Affirmed.

**SO ORDERED.**                                              **ENTERED:**

**DATE:**  __March 19, 2018__                    _____
                                                           **HON. MARIA VALDEZ**
                                                           **United States Magistrate Judge**